Harold SALTZ, Plaintiff,

v.

THE CITY OF NEW YORK and
Unidentified New York City
Police Officers, Defendants.

No. 00 Civ. 1183(CBM).

United States District Court,
S.D. New York.

Jan. 31, 2001.

Thomas Sheehan, Cheda & Sheehan, Jackson Heights, NY, for Plaintiff.

Brett H. Klein, the City of New York Law Department, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

After dismissing plaintiff Harold Saltz's complaint, this court ordered a hearing on Rule 11 sanctions against plaintiff's attorney, Mr. Thomas Sheehan, based upon facts concerning Mr. Sheehan's investigation of plaintiff's claim elicited during this court's December 5, 2000 hearing. This court held a Rule 11 sanctions hearing on December 15, 2000. For the reasons discussed below, this court finds that Rule 11 sanctions are warranted against Mr. Sheehan in this case.

## I. BACKGROUND

### A. The Underlying Action

Mr. Thomas Sheehan, counsel for plaintiff Harold Saltz, filed this action under 42 U.S.C. § 1983 on February 17, 2000 against defendants City of New York and unidentified New York City police officers for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States alleging the use of excessive force and false arrest.

The complaint in this action, which was signed and filed by Mr. Sheehan, alleged the following facts. On May 8, 1997, while sitting on a park bench in the vicinity of 29th Street and 2nd Avenue in Manhattan, plaintiff was approached by a slovenly-dressed individual who appeared to be homeless. The individual flashed a badge and told plaintiff that he was a police officer. The individual then assaulted plaintiff and dragged him toward and into an unmarked black van. Two other unidentified individuals were in the van. Plaintiff demanded to be brought to the station house, but instead had hot coffee poured on him. Plaintiff was told, "What would the rabbi say if he saw a nice Jewish boy lying there that way." Plaintiff was released in the vicinity of 29th Street and 3rd Avenue in Manhattan. Plaintiff claims the license plate of the van was A255 followed by three additional letters.

Defendant submitted a motion for summary judgment on September 27, 2000. Mr. Sheehan did not respond to this motion or file any opposition papers. This court held a hearing on defendant's summary judgment motion on December 5, 2000. At that hearing, Mr. Sheehan stated that he wrote defendant a letter requesting the motor pool records so that he could try to match up the partial licence plate number to one of the police department's vans. See Dec. 5, 2000 Hr'g Tr. at 3–4. Defendant's counsel, Mr. Brett Klein, responded that defendant provided Mr. Sheehan with the Civilian Complaint Review Board ("CCRB") report on this matter. That report included information from a CCRB investigation done to determine the identity of the van. See Dec. 5, 2000 Hr'g Tr. at 6. Mr. Klein stated that "they [the CCRB] weren't able to identify [a City van], based on the scant information provided by the plaintiff, after a search, and Mr. Sheehan was provided with those records." Dec. 5, 2000 Hr'g Tr. at 9.

Mr. Klein also stated that Mr. Sheehan did not complain about the information with which he was provided anytime before the close of discovery and made no motions to compel further information. See Dec. 5, 2000 Hr'g Tr. at 6, 9–10. Mr. Sheehan responded that he had sent letters raising complaints to defendant and to Judge Wood. See Dec. 5, 2000 Hr'g Tr. at 10. However, when this court requested copies of these letters, Mr. Sheehan stated

that he did not have them. *See* Dec. 5, 2000 Hr'g Tr. at 10.

This court then informed Mr. Sheehan: "You seem to have filed this case without having a case. . . . Which is a violation of Rule 11." Dec. 5, 2000 Hr'g Tr. at 10,18. This court then issued an order scheduling a "[h]earing on Rule 11 sanctions against plaintiff's counsel December 15, 2000 at 3:30 p.m. in Rm 26A." Order, Dec. 5, 2000.

This court granted defendant's motion for summary judgment because plaintiff was unable to link the partial license plate number to any vans owned by the City of New York and was thus unable to show that the individuals who accosted him were New York City employees. *See Saltz v. City of New York,* 2000 WL 1793192 (S.D.N.Y. Dec. 5, 2000) (holding that plaintiff had shown no basis for holding the City of New York liable).

### B. Mr. Sheehan's Investigation of the Alleged Facts

The Rule 11 sanctions hearing was held on December 15, 2000, at which time this court sought to clarify the history of Mr. Sheehan's efforts to investigate the alleged facts of this case. The incident plaintiff complained of occurred on May 8, 1997. Plaintiff filed a complaint with the CCRB on May 19, 1997, and the CCRB informed plaintiff of the results of its investigation on June 5, 1998. According to Mr. Sheehan, plaintiff contacted Mr. Sheehan near the end of 1998. *See* Dec. 15, 2000 Hr'g Tr. at 5. Mr. Sheehan filed the complaint in this case on February 17, 2000. During this period of one year and several months between the time plaintiff first contacted Mr. Sheehan and the time the complaint was filed, Mr. Sheehan did nothing to investigate plaintiff's claim other than interviewing the plaintiff, getting his medical records, and getting a copy of the CCRB report. *See* Dec. 15, 2000 Hr'g Tr. at 8, 9.

The first pre-trial conference in this case was held before Judge Kimba Wood on April 28, 2000 at which time Judge Wood entered a pre-trial order stating, among other things, that all discovery was to be completed by June 26, 2000. Defendant submitted a letter to Judge Wood dated July 10, 2000. The letter informed the court that plaintiff could not prove his claim and that plaintiff failed to respond to discovery demands or appear for a deposition. Judge Wood endorsed the letter on July 12, 2000 stating that if plaintiff did not give good cause for failure to appear for his deposition, the defendant could move to dismiss. Defendant served its motion for summary judgment on plaintiff on September 26, 2000 and the motion was filed on September 27, 2000. Opposition papers were to be served on or before October 16, 2000 and defendant's reply was to be served on or before October 23, 2000. On October 23, 2000, defendant submitted a letter to Judge Wood informing the court that defendant's motion was unopposed. On the date this court heard defendant's motion, December 5, 2000, the motion was still unopposed.

After clarifying the record in this manner, this court then asked Mr. Sheehan if he wanted to say anything concerning the issue of Rule 11 sanctions. *See* Dec. 15, 2000 Hr'g Tr. at 19. Mr. Sheehan responded with a catalog of his efforts to procure information concerning the alleged facts. Mr. Sheehan stated that he filed this action within the three-year statute of limitations period and that he had hoped to identify the individual defendants in this action based on defendant's motor pool records. *See* Dec. 15, 2000 Hr'g Tr. at 19. Mr. Sheehan sent a letter dated March 16, 2000 to defendant asking for the names of the officers involved in the incident and Mr. Sheehan submitted discovery demands to defendant by letter dated March 24, 2000. *See* Dec. 15, 2000 Hr'g Tr. at 20. Defendant responded to Mr. Sheehan's discovery demands on April 28, 2000. *See* Dec. 15, 2000 Hr'g Tr. at 21.

Mr. Sheehan then pursued particular discovery requests including defendant's motor vehicle records by letter dated April

13, 2000 requesting that defendant turn over this information by April 21, 2000. *See* Dec. 15, 2000 Hr'g Tr. at .21. In particular, Mr. Sheehan sought the records of the vans used by the police on May 8, 1997 and a record of all vans with the partial license plate number A255. *See* Dec. 15, 2000 Hr'g Tr. at 22. Mr. Sheehan stated that defendant's only response was to provide the CCRB report. *See* Dec. 15, 2000 Hr'g Tr. at 23. Mr. Klein clarified for the court that defendant's response to Mr. Sheehan's requests included a copy of the CCRB report which included "the record ... where the investigator was informed that the alleged van cannot be identified with a partial number because of insufficient information." Dec. 15, 2000 Hr'g Tr. at 24.

Mr. Sheehan explained that he believed that had the motor pool records been turned over to him, he could have identified the van and thus the officers involved even though the CCRB had concluded that it could not identify the van or the officers. Mr. Sheehan stated that a significant number of CCRB reports result in a finding that the claim is unsubstantiated and that Mr. Sheehan had been successful in the past in identifying officers where the CCRB had not. *See* Dec. 15, 2000 Hr'g Tr. at 26.

At this point, Mr. Klein informed the court that in plaintiff's letter of complaint to Mayor Giuliani, dated May 12, 1997, plaintiff had described his assailants' van as "an unmarked unidentified van with an oval shaped plate of foreign origin." Dec. 15, 2000 Hr'g Tr. at 29. Mr. Sheehan remarked that his reasonable interpretation of the phrase "foreign origin" was that the plate was not a New York plate. *See* Dec. 15, 2000 Hr'g Tr. at 29.

This court then asked Mr. Sheehan if he had anything else to say regarding the Rule 11 hearing. *See* Dec. 15, 2000 Hr'g Tr. at 31. Mr. Sheehan added that at the April 28, 2000 pre-trial conference he verbally reiterated his request for the motor pool records and he believed that he also

followed up that request with a phone call. *See* Dec. 15, 2000 Hr'g Tr. at 31. Mr. Sheehan admitted that he did not bring any motion to compel the motor pool records. *See* Dec. 15, 2000 Hr'g Tr. at 31.

Mr. Klein added that from April 28, 2000, when defendant provided its discovery responses, to June 26, 2000, when discovery closed, Mr. Sheehan took no further action concerning the motor pool records. *See* Dec. 15, 2000 Hr'g Tr. at 32.

## II. DISCUSSION

### A. Procedural Requirements for Rule 11 Sanctions

■ Rule 11 of the Federal Rules of Civil Procedure provide that a court may impose sanctions on its own initiative. *See* FED. R. CIV. P. 11(c)(1)(B). "If a court wishes to exercise its discretion to impose sanctions sua sponte, it must 'enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney ... to show cause why it has not violated subdivision (b) with respect thereto.'" *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328–29 (2d Cir.1995) (*quoting* FED. R. CIV. P. 11(c)(1)(B)). To comply with Rule 11's due process requirements of notice and opportunity to be heard:

'[a]n attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard of that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.'

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir.1999) (*quoting Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.1997)).

This court provided Mr. Sheehan with notice of the sanctionable conduct at the December 5, 2000 hearing. During that

hearing, Mr. Sheehan's failure to investigate his client's claims was discussed and this court stated that filing a case without having a case was a violation of Rule 11. The court then provided Mr. Sheehan with an opportunity to be heard before determining whether to levy sanctions by ordering a Rule 11 sanctions hearing which was held on December 15, 2000.

### B. Basis for Rule 11 Sanctions

Rule 11 sets forth the conduct that forms the basis for the imposition of sanctions. *See* FED. R. CIV. P. 11(b). Relevant to this case, Rule 11 provides that: "By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after *an inquiry reasonable under the circumstances,* ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law ...; [and] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support *after a reasonable opportunity for further investigation or discovery ...."* FED. R. CIV. P. 11(b) (emphasis added).

■■■ "In considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated.... [A]n attorney is entitled to rely on the objectively reasonable representations of the client." *Hadges,* 48 F.3d at 1329. However, "[w]hen an attorney must rely on his client, he should question him thoroughly, not accepting his version on faith alone.... '[I]f all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his [Rule 11] obligation.'" *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.,* 114 F.R.D. 684, 689 (S.D.N.Y.1987) (*quoting Coburn Optical Indus. v. Cilco, Inc.,* 610 F.Supp. 656, 659 (M.D.N.C.

1985)). The Advisory Committee Notes to the 1993 amendments to Rule 11 emphasize the reasonable inquiry into factual allegations required by the rule:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification. Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses....

FED. R. CIV. P. 11 advisory committee's notes.

■■■ This court finds that Mr. Sheehan did not make a reasonable inquiry into the facts alleged in plaintiff's complaint. Mr. Sheehan did not attempt to investigate plaintiff's claims during the period of over one year between when he was first retained by his client and when he filed the complaint. Further, Mr. Sheehan did not make any effort to determine whether his client's description of the van license plate contained in his client's letter to Mayor Guliani comported with reasonable descriptions of police van license plates, despite the fact that his client described an "oval shaped plate of foreign origin."

Mr. Sheehan persisted in pursuing this case even after discovery failed to elicit any evidence which could link plaintiff's alleged attackers with any persons within the police department. Mr. Sheehan made modest efforts to request the police motor pool records; however, Mr. Sheehan failed

to move to compel these records from defendant and failed to notify the court in any way of perceived deficiencies in defendant's discovery responses. In sum, Mr. Sheehan failed to conduct what this court considers to be a reasonable inquiry into his client's alleged claims.

## C. Type of Sanctions

Under Rule 11, "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(2). "[T]he sanction may consist of, or include, directives of a nonmonetary nature, [or] an order to pay a penalty into court...." *Id.*

The Advisory Committee Notes to the 1993 amendments to Rule 11 offer the following discussion concerning the types of sanctions available and the factors to be considered by the court in choosing sanctions:

> The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities.... The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the

responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

FED. R. CIV. P. 11 advisory committee's notes.

■ This court believes that a fine of $200.00 payable to the court is sufficient to deter this attorney from filing baseless 42 U.S.C. § 1983 claims. Of course, this court notes that should Mr. Sheehan bring another such claim into this court without taking the steps necessary to meet Rule 11's reasonable inquiry standard, the fine assessed by this court will be higher.

## III. CONCLUSION

Because Mr. Sheehan failed to reasonably evaluate the insufficient facts provided by plaintiff before filing the complaint in this case, this court finds that Mr. Sheehan violated Rule 11. Mr. Sheehan is ordered to pay a penalty of $200.00 to the Clerk of this Court on or before March 1, 2001.

SO ORDERED.